Filed 11/22/21  P. v. Lozolla CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KIRK BRANDY LOZOLLA,<br><br>    Defendant and Appellant. | E076232<br><br>(Super.Ct.No. FSB12071)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed and remanded.

Patricia A. Scott, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant, Kirk Brandy Lozolla, filed a petition for resentencing pursuant to Penal Code section 1170.95,[1] which the superior court denied. On appeal, defendant contends the court erred in summarily denying his petition. We reverse and remand the matter for an evidentiary hearing.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

On August 26, 1996, the victims, Antonio Reyes and Raymond Jaramillo, visited Yvonne Mendez's home in Colton. Daniel Lopez and defendant were already there, and they told Reyes and Jaramillo that they were from "North Side Colton," a local gang. One of the victims said they were from "West Side Verdugo," also known as "Mt. Vernon," a gang that had problems with the North Side Colton gang.

The victims left and said they would return later. When they returned, they went to a bedroom and lay on the bed with Mendez. Defendant, Lopez, Michael Hernandez, and Jesse Perez (all North Side Colton gang members) also entered the bedroom.

The four intruders asked the victims, "What are you punks doing here?" The victims identified themselves as "Mt. Vernon" gang members and tried to leave the bedroom. All four of the intruders pulled out guns and said, "You guys aren't going no

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] On our own motion we take judicial notice of the opinion from defendant's appeal of the judgment. (*People v. Lozolla* (Dec. 12, 1998, E021055) [nonpub. opn.].) The opinion was attached to the People's informal response to the petition. The superior court's tentative decision, which became its final decision, reflects that the court relied extensively on that opinion. We derive much of our factual and procedural recitation from that opinion.

where yet." They also said, "You are not supposed to be in Colton, and what are you punks doing in Colton?"

The four intruders told the victims to put their hands up, and then they searched them for weapons. They also told the victims to empty their pockets onto the bed. Still holding the victims at gunpoint, the intruders began beating them. Hernandez and/or Perez kicked Reyes in the head. Defendant hit and/or kicked Jaramillo. The intruders then told the victims to leave, and all four said that if they ever came back to Colton they would kill them. They also mentioned, "North Side Colton," again.

The intruders forced the victims out the back door of the residence and into an alley. One of the intruders told someone sitting in a red car to start the car. The intruders told the victims to run. They again told the victims that if they ever came back, they would kill them.

As the victims started to run, Jaramillo heard gunshots and saw Reyes running past him. Reyes let out a moan, and Jaramillo turned to go back toward him. Jaramillo saw all four intruders standing outside the residence and saw shots being fired from all four of their guns. At one point in his testimony, Jaramillo said he could not tell whether the four people he saw outside the residence when he looked back were male or female. However, he confirmed that defendant and Lopez were among the four who were outside.

Jaramillo was hit in the face by a bullet. He fell to the ground but got up and started running again. As he did so, he was hit in the back by another bullet. Reyes died of gunshot wounds to the head, chest, and abdomen. The intruders left the scene in the red car.

3

The trial court instructed the jury with CALJIC No. 3.02:[3] "One who aids and abets [another] in the commission of a crime [or crimes] is not only guilty of [that crime], but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime[s] originally aided and abetted. [¶] In order to find a defendant guilty of the crime[s] of Murder or Attempted Murder under this theory, [as charged in Count[s] 1 and 2,] you must be satisfied beyond a reasonable doubt that [¶] 1. The crime or crimes of (1) Assault with a Deadly Weapon, or (2) Robbery [were] committed; [¶] 2. That a defendant aided and abetted [those] crime[s]; [¶] 3. That a co-principal in those crimes committed the crime[s] of Murder and/or Attempted Murder; and [¶] 4. The crime[s] of Murder and Attempted Murder [were] a natural and probable consequence of the commission of the crime[s] of (1) Assault with a Deadly Weapon, or (2) Robbery."

The trial court additionally gave the jury CALJIC No. 8.21: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs [during the commission or attempted commission of the crime] of robbery is murder of the first degree when the perpetrator had the specific intent to commit the crime of robbery." The court also gave the jury CALJIC No. 8.27, which instructed: "If a human being is killed by any one of several persons engaged in the commission or attempted commission of the crime of robbery, all persons, who either directly and actively commit the act constituting robbery, or who with knowledge of the unlawful purpose of the perpetrator of the robbery

_____

[3] By order dated September 22, 2021, we granted defendant's request that we take judicial notice of the jury instructions given at trial.

4

and with intent or purpose of committing, encouraging, or facilitating the commission of the robbery, aid, promote, encourage, or instigate by act or advice the robbery commission, are guilty of murder of the first degree, whether the killing is intentional, unintentional, or accidental."

The jury convicted defendant of the first degree murder of Reyes (count 1), the attempted murder of Jaramillo (count 2), and two counts of residential robbery against Reyes and Jaramillo (counts 3 & 4). The jury found true allegations that (1) the attempted murder was willful, deliberate, and premeditated; (2) defendant personally used a firearm in the commission of the robberies; and (3) defendant was armed in the commission of all four offenses. The trial court imposed sentences and enhancements of 13 years four months for the robberies, 26 years to life for the murder, and life plus one year for the attempted murder.[4]

On April 22, 2019, defendant filed a form petition for resentencing pursuant to section 1170.95. On July 19, 2019, the court appointed counsel for defendant.

On November 13, 2019, the superior court issued a tentative decision denying defendant's petition. Having reviewed this court's opinion from defendant's appeal of

_____

[4] A jury found defendant's coperpetrator Hernandez guilty of first degree murder, attempted premediated murder, and two counts of first degree robbery in concert. (*People v. Hernandez* (Apr. 2, 1998, E020326) [nonpub. opn.] (*Hernandez*).) Hernandez likewise appealed his convictions; this court modified his sentence but otherwise affirmed the judgment. (*Ibid.*) Hernandez also filed a section 1170.95 petition, which the superior court denied. (*People v. Hernandez* (Apr. 27, 2020, E072790) [nonpub. opn.].) Hernandez also appealed the denial of his petition, which this court affirmed. (*Ibid.*) Lopez was charged and tried jointly with defendant, but was acquitted on all charges. The records on appeal for defendant's and Hernandez's appeals are stored in this court's archives.

5

the judgment, the court observed, "Neither the felony murder rule, nor the natural and probable consequences doctrine were implicated in this case." The court also noted that defendant was one of four people shooting at the victims as they ran from defendant's group: "Defendant . . . was therefore acting with the intent to kill. Certainly shooting at the victims as they tried to escape would classify Defendant as a major participant acting with reckless indifference to human life. [¶] . . . Defendant is not entitled to relief as he was acting as a major participant, with intent to kill and with reckless indifference to human life."

Counsel for both parties submitted on the superior court's tentative decision. On November 15, 2019, the tentative decision became the ruling on defendant's petition.

At a hearing on December 13, 2019, the superior court noted that there was a misunderstanding on the matter when counsel had submitted on the tentative decision. Counsel intended to submit only on the issue of whether the section 1170.95 petitioning procedure was constitutional, "not to address the issue of whether or not [defendant] would, nevertheless, be liable for murder under the new statute." Thus, the court vacated its decision and set the matter for further hearing.

On January 29, 2020, the People submitted an informal response to defendant's petition. The People contended defendant was ineligible for relief because "[t]he evidence proves beyond a reasonable doubt that the defendant was a major participant in the robbery in the course of which he demonstrated reckless indifference to human life."

At the hearing on October 2, 2020, defense counsel submitted on the superior court's previous tentative decision. The court ruled: "So that being the case, the Court

6

finds that [defendant] would still be liable for murder . . . . And therefore, he is not eligible for any relief under Penal Code Section 1170.95. So the petition for [re]sentencing is denied. [¶] . . . [¶] The tentative decision will now be the final decision of the Court."

## II. DISCUSSION

Defendant contends the superior court erred in summarily denying his petition without issuing an order to show cause. Defendant argues that the court's determination that defendant was not entitled to relief was based on its erroneous conclusions that the jury was not instructed on the felony-murder rule and natural probable consequences doctrine. Defendant contends "the court engaged in impermissible fact-finding and weighing of evidence." Defendant maintains that, based on the trial court's instructions to the jury and its findings, the court was required to set an order to show cause. The People concede that defendant is not ineligible for relief as a matter of law; thus, he is entitled to an evidentiary hearing. We agree.

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats 2018, ch. 1015, § 1, subd. (f).) In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted

7

murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

"Pursuant to section 1170.95, an offender must file a petition in the sentencing court averring that: '(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019.' [Citations.] Additionally, the petition shall state '[w]hether the petitioner requests the appointment of counsel.' (§ 1170.95, subd. (b)(1)(C).) If a petition fails to comply with subdivision (b)(1), 'the court may deny the petition without prejudice to the filing of another petition.'" (*Lewis*, *supra*, 11 Cal.5th at pp. 959-960.)

"Where the petition complies with [section 1170.95,] subdivision (b)'s three requirements, then the court proceeds to subdivision (c) to assess whether the petitioner has made 'a prima facie showing' for relief." (*Lewis*, *supra*, 11 Cal.5th at p. 960.) A court may rely on the record of conviction in determining whether a prima facie showing has been made. (*Id*. at p. 970.) "The record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Id*. at p. 971.) "While the trial court may look at the record of conviction after the appointment of

8

counsel to determine whether a petitioner has made a prima facie case for section 1170.95 relief, the prima facie inquiry under subdivision (c) is limited.  Like the analogous prima facie inquiry in habeas corpus proceedings, "'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause.'"'" (*Ibid.*)

"'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'" (*Lewis*, *supra*, 11 Cal.5th at p. 971.)  "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id.* at p. 972.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Ibid.*)  "In sum, the parties can, and should, use the record of conviction to aid the trial court in reliably assessing whether a petitioner has made a prima facie case for relief under [section 1170.95,] subdivision (c)." (*Ibid.*)

In this case, the superior court denied defendant's petition at the prima facie stage under section 1170.95, subdivision (c).  "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.]  This is a purely legal conclusion, which we review de novo." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 167, review granted Nov. 18, 2020, S264978;

9

accord, *People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142, review granted Oct. 14, 2020, S264284.)

Here, contrary to the superior court's conclusion, the jury was instructed with both the felony-murder rule and the natural and probable consequences doctrine. Thus, the court's determination that defendant intended to kill or was a major participant acting with reckless disregard for human life, could have been based on its error in understanding upon what theories the jury was instructed. Ultimately, where the jury was instructed on these theories, a determination of under which theory the jury found defendant guilty at the prima facie stage would involve quintessentially prohibited "'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) Therefore, the court erred in denying the petition without setting an order to show cause because defendant made a prima facie showing of relief.

"If the trial court determines that a prima facie showing for relief has been made, the trial court [shall] issue[] an order to show cause, and then . . . hold a hearing 'to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not . . . previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence.' [Citation.] 'The prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens.' [Citation.] At the hearing stage, 'the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing.'" (*Lewis*, *supra*, 11 Cal.5th at p. 960.)

Because defendant made a prima facie showing, the superior court was required to set an order to show cause prior to making such a determination. Only after the parties are given the opportunity to produce the record of conviction, which could also include the clerk's and reporter's transcripts on appeal, and offer new or additional evidence, can the court engage in factfinding in order to make such a determination. Moreover, the court's factfinding would be subject to the prosecution's burden of proving beyond a reasonable doubt that defendant is ineligible for resentencing. We express no opinion as to how the trial court should resolve the issues on remand.

### III.  DISPOSITION

The order denying defendant's petition is reversed. The matter is remanded to the superior court to issue an order to show cause and to hold a hearing to determine whether to vacate defendant's murder conviction, recall the sentence, and resentence defendant.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


FIELDS
J.


MENETREZ
J.

11